UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

IN RE:

| | | |
|---|---|---|
| Robert Wilson Barnes | ) | CASE NO: 09-07014-hb |
| Colleen Marie Barnes | ) | |
| 1 Yorkswell Lane | ) | |
| Greenville, SC 29607 | ) | |
| | ) | CHAPTER 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DISCLOSURE STATEMENT**

**Robert Wilson Barnes and Colleen Marie Barnes**, the debtors-in-possession, provide this Disclosure Statement to all of **their** known creditors in order to disclose that information deemed by the Debtors to be material, important, and necessary for **all** creditors to arrive at a reasonably informed decision in exercising their right to vote on the Plan of Reorganization.

This Disclosure Statement has been filed with the U. S. Bankruptcy Court in Columbia, South Carolina. A Plan of Reorganization was filed as well. Both include a "Schedule of Payments" which itemizes the amounts to be paid to each creditor.

By the time you receive a copy of this Disclosure Statement, which should be accompanied by a copy of the Plan of Reorganization and a Voting Ballot, a hearing on the Disclosure Statement will have already been held and an order approving it will have been issued by the Bankruptcy Judge. This is the procedure unless you have requested a copy of the Disclosure Statement prior to the hearing.

The next step is for you to vote to accept or reject the Debtors' Plan of Reorganization. The court has scheduled a hearing on the Plan of Reorganization and you should have been or will be notified of the exact time, date and location. Creditors may vote on the Plan of Reorganization by filling out and mailing the accompanying Ballot to the Bankruptcy Court. As a creditor your vote is very important. The Plan of Reorganization can be confirmed by the Court if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class voting on the Plan. In the event the requisite acceptances are not obtained, the court may nevertheless confirm the Plan if the court finds the Plan accords fair and equitable treatment to the class rejecting it.

It is important in making your decision to accept or reject the Debtors' Plan of Reorganization to especially review the "liquidation analysis" section of the Disclosure Statement.

The question in a bankruptcy reorganization (such as Chapter 11) is whether or not the creditor receives an amount equal to what it would have received under a bankruptcy liquidation (i.e., under Chapter 7), not whether or not they receive all that is owed to them. It is, therefore, important for a creditor to understand that simply because the creditor does not like bankruptcy or is not going to receive all of its money under the Plan, does not mean that the creditor should reject the Plan or not vote on the Plan at all. Again, therefore, it is important to review the liquidation

1

analysis. Of course, a creditor will want to review the remaining portions of the Disclosure Statement as well.

The Debtors' Plan of Reorganization is based upon the Debtors' belief that the present forced liquidation (Chapter 7) net value of their principal assets is so small as to offer the potential of only a minimal recovery to creditors. The Debtors believe that a Chapter 11 reorganization will allow a more substantial recovery to creditors.

## ADEQUATE INFORMATION

A disclosure statement should contain adequate information to allow creditors to make an informed decision as to whether the confirmation of the plan is in their best interests. The disclosure statement should be meaningful and easily understood. While circumstances will vary widely from one Chapter 11 case to the next, and, therefore, the parameters of "adequate information" may also vary, the following information is considered to be critical to an evaluation of the adequacy of a disclosure statement.

1. The necessary financial information, data and projections relevant to the creditors' decision to accept or reject the Chapter 11 plan.

2. The assets and liabilities of the business of applicable. Provide current balance sheet information and the source of appraisal values.

3. The events leading to the filing of the petition and the financial difficulties of the debtor.

4. The operating condition and success of the debtor while in Chapter 11.

5. An estimate of the return to creditors under a Chapter 7 liquidation (brief liquidation analysis).

6. A list of all claims against the debtor, if practicable, showing the claims to which objections are anticipated and the reasons for the objections. A list of claims to be recognized under the plan.

7. A statement regarding the debtor's compliance with all responsibilities to file tax returns and pay taxes due both pre and post-petition.

8. An analysis of the potential tax consequences to the debtor and other parties-in-interest resulting from the plan.

9. The parties responsible for the future management of the debtor (controlling persons) if applicable, and the rate or amount of compensation to be paid for their services.

10. A detailed estimate of te administrative expenses contemplated under the plan, including, but not limited to, attorneys' fees, accountants' fees ad other professional fees and expenses. This includes quarterly fees to the Office of the United States Trustee ("UST").

11. The estimated collectibility of the debtor's accounts receivable if applicable.

12. The risks posed to creditors under the plan.

13. An analysis of potential preferential or otherwise voidable transfers and the debtor's plan, if any, to pursue such recoveries.

14. Anticipated future litigation (bankruptcy and non-bankruptcy contexts) and the estimated cost and sources of revenue to fund this litigation.

15. A statement that the plan represents a legally binding arrangement and should be read in its entirety, as opposed to relying on the summary in the disclosure statement.

16. The impaired classes under the plan. Include a layman's definition of impairment.

17. A statement that approval of the disclosure statement by the Bankruptcy Court does not constitute approval of the plan.

18. Whether any creditors' committee exists and, if so, whether it participated in negotiating the terms of the plan.

19. An explanation of the voting requirements for acceptance of the plan.

### PROVISIONS SPECIFIC TO DEBTORS WHO ARE INDIVIDUALS

Title 11 includes a number of provisions that apply specifically to Chapter 11 cases in which the debtor is an individual, including the following:

1. Property of the bankruptcy estate includes property acquired post-petition. *See* 11 U.S.C. §1115(a)(1).

2. Property of the bankruptcy estate includes post-petition earnings from personal services. *See* 11 U.S.C. §1115(a)(2).

3. The plan must provide for the debtor to pay creditors all or such portion of earnings from personal services or other future income of the debtor as is necessary for the execution of the plan. *See* 11 U.S.C. §1123(a)(8).

4. If the holder of an allowed unsecured claim objects to confirmation of the plan, the plan must either provide for payment of the full value of the claim as of the effective date, or for payment of the projected disposable income of the debtor for five years or for the term of the plan, whichever is longer. Disposable income is defined in 11 U.S.C. §1325(b)(2). *See* 11 U.S.C. §1129(a)(15).

5. At the request of the debtor, the trustee, the UST, or the holder of an allowed unsecured claim, the plan may be modified at any time after confirmation but before completion of payments to (a) increase or reduce the amount of payments to a particular class; (b) extend or reduce the time period for payments; (c) change the amount to be paid to a creditor to the extent necessary to take account of any payments made other than under the plan. *See* 11 U.S.C. §1127(e).

6. At the request of the Court, the UST, or any party in interest, the debtor must file with the Court a copy of any post-petition federal income tax returns at the same time they are filed with the taxing authorities, and certain pre-petition federal income tax returns that had not been filed with the taxing ch authorities on the petition date. *See* 11 U.S.C. §521(f).

7. Except as provided below an individual debtor does not receive a discharge until completion of all payments under the plan. The Court may not grant a discharge until completion of all payments under the plan. However, the Court may grant a discharge to an individual debtor, who has not completed all plan payments, if the Court finds that the value of the property actually distributed to unsecured creditors as of the effective date is not less than the amount that would have been paid in a chapter 7 case if the estate had been liquidated on the effective date, and if the Court also finds that modification of the plan under 11 U.S.C. §1127 is not practicable. *See* 11 U.S.C. §1141(d)(5).

3

## INFORMATION REGARDING DEBTOR

The debtors-in-possession, Robert Wilson Barnes, and Colleen Marie Barnes, are married, and reside at 1 Yorkswell Lane, Greenville, SC with their two children. As is reflected in the schedules filed with the Bankruptcy Court, the debtors own their primary residence. They also own a condominium located at 521 Fagin Circle in Mauldin, SC. Additionally, they own and operate a business known as Barnes Commercial Holdings, LLC, which owns 19 residential and commercial properties. Fourteen are rented, and the remaining five are vacant unimproved lots. This LLC is also in a chapter 11 reorganization in S.C. in case number 09-06594-hb. The debtors also own "Lowery Machine & Supply, LLC", which is in a chapter 7 bankruptcy in SC in case number 09-07075-hb. The debtors have also operated in past years the following businesses: "Sable Investments Group, LLC"; "Spring River Holdings, LLC"; "RD Upstate A, LLC"; "SABEX, LLC"; "EGT Digital, LLC"; "Screen Printing Parts, LLC"; "Brighton Builders, Inc."; and "Progressive Machine, Inc." These businesses all suffered when the economy crashed in 2008. All of the above-named businesses are located in Greenville County, South Carolina. All businesses named above are now inactive, except for "Barnes Commercial Holdings, LLC." The debtors continue to operate that business, which buys, sells, and leases real properties. The bankruptcy schedules filed with the Court reflect that the debtors owed almost $600,000 in unsecured debt at the time they filed chapter 11 on September 22, 2009. These debts consisted mostly of credit cards and lines of credit. When the debtors were unable to make all payments toward those, the banks cut off those lines of credit, leaving the debtors and their businesses in dire straights. The debtors then were unable to pay other creditors, and threats of lawsuits against the debtors began. In the summer of 2009, they visited their present bankruptcy attorney's office, and began exploring financial counseling options. All of the above-named businesses in which the debtors had been involved evolved around either real estate or manufacturing. Mr. Barnes has been involved in manufacturing all of his adult life. Some of the businesses had performed satisfactorily until the economy began to take a downward turn in late 2006. Some of the businesses were started in 2007 and 2008. However, the debtors did not realize at that time that the economy would not recover, and would instead worsen. Business became worse than it had ever been in the fall of 2008. The businesses had done well at first. However, based upon slow economic conditions that began in 2006, and worsened in 2007, the businesses suffered, because consumers stopped spending their money on non-essentials, and large corporations with which the businesses attempted to deal began cutting back on the purchase of products and inventory. Additionally, the debtors were unable to borrow money from banks to help them financially until the economy improved, and they began being threatened by creditors. By the time they filed chapter 11 on September 22, 2009, several creditors had threatened suit. The debtors closed the business December 31, 2009, after falling considerably in arrears with vendor debts and other obligations. However, they continue to weather the storm while creating new ideas for their business, and attempting to advance their name not only in the United States, but also in the European and South and Latin American markets. Since the filing of the chapter 11, Mr. Barnes has aggressively targeted those markets, and has successfully been named as the exclusive broker for machinery sales and service for two European companies. Both debtors are engaged in the business, and it is holding its own in a still slow economy; however, they hope things improve later in the year 2010 and in 2011 so that an opportunity to grow cans exist.

At the time of the filing of their chapter 11 reorganization, the debtors' schedules filed with the Bankruptcy Court reflected secured debt in the approximate amount of $502,304 with unsecured debt approximating $598,900. Schedules further reflect the value of real property owned by the debtors approximated $485,000. The value of personal property as reflected in their schedules approximates $600,977. As part of their reorganization, the debtors plan to continue operating their business. They propose to continue the normal mortgage payments on their primary residence and on the condominium as well. However, they have been advised by their present bankruptcy attorney to make

application for a modification under the "Home Affordable Modification Program" ("HAMP"). They believe that the IRS proof of claim is incorrect as H&R Block, the company who filed their tax returns has discovered a serious error that may indicate upon amending the returns that they not only do not owe the IRS, but may be entitled to a substantial refund. In their chapter 11 plan of reorganization, the debtors propose to pay general unsecured creditors a percentage of their allowed claims without interest over a period of 60 months.

The Debtors-in-Possession have already begun undertaking measures in which to increase profits to successfully fund the plan, and ask for the cooperation of their creditors in this time of reorganization.

The source of information used in this Disclosure Statement includes the following:

(1) Debtors' opinion
(2) Debtors' schedules filed with the bankruptcy court
(3) Financial statements prepared by Debtors' accountant, with cooperation of the Debtors
(4) Notes and invoices provided by the Debtors
(5) Proofs of claims and other documentation filed and/or provided by creditors
(6) Monthly operating reports filed with the bankruptcy court
(7) Tax returns

All who review this Disclosure Statement should be aware that no official audit of the Debtors' books has been performed, and the information provided to the Debtors' accountant and attorney is provided by the Debtors and is unaudited and some information is based upon the Debtors' opinions. Therefore, creditors and parties in interest should review the entire Disclosure Statement with that in mind. Additionally, each should review not just the Disclosure Statement, but also the entire Plan of Reorganization in making a decision to accept or reject the Plan. No actual risks are posed to creditors under this Plan, and based upon the liquidation analysis it is the Debtors' opinion and the opinion of their attorney that creditors will receive more under this Chapter 11 Plan than in a Chapter 7 liquidation of assets. However, each creditor should understand that the Plan of Reorganization once approved by the Court does in fact represent a legally binding arrangement, and therefore, should be read in its entirety as opposed to relying solely on the summary of the Plan reflected in the Disclosure Statement. Also, of importance is the fact that Bankruptcy Court approval of the Disclosure Statement does not constitute approval by that Court on the merits of the Plan of Reorganization. These are two separate and distinct documents, and approval of one by the Court is determined separately and distinctly from approval of the other.

No creditors committee exists in this case. No preferential or other avoidable transfers occurred in this case. The debtors' business known as "Barnes Commercial Holdings, LLC" of which the debtors are principals filed its own chapter 11 financial reorganization in case number 09-06594-hb, and has filed its chapter 11 plan as well. No securities are involved in this case. The Debtors will continue to operate that business. The Debtors are consulting with their accountant regarding potential tax consequences resulting from the Plan.

The Debtors ask that each creditor and party in interest review this Disclosure Statement and Plan of Reorganization, and the Debtors ask that each cooperate in allowing all a successful reorganization effort in order to bring resolve to these matters.

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

3.01    **Class 1** Except to the extent that the holder of a particular claim has agreed to a different treatment, with respect to a Class of claims of a kind specified in §507(a)(1), 507 (a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of the Bankruptcy Code, each holder of such Class will receive:

    (i)    if such Class has accepted the Plan, deferred cash payments of a value, as of the effective date of the Plan, equal to the allowed amount of such claim, or

    (ii)    if such Class has not accepted the Plan, cash on the effective date of the Plan equal to the allowed amount of such claim.

3.02    **Class 2** Except to the extent that the holder of a particular claim has agreed to a different treatment, with respect to a claim of a kind specified in §507(a)(2) or 507(a)(3) of the Bankruptcy Code, on the effective date of the Plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim. As to a claim of a kind specified in §507(a)(8), the holder of such claim will receive on account of such claim regular installment payments in cash,

    (i)    of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

    (ii)    over a period ending not later than 5 years after the date of the order for relief under §301, 302, or 303; and

    (iii)    in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under §1122(b).

3.03    **Class 3(A) through 3(B)** Secured Claims held by creditors with security interests in real and/or personal property, including stock, shall be paid in monthly installments beginning on the Effective Date of the Plan and continuing until such time they are paid in full, unless the collateral security these debts is to be surrendered, in which case any deficiency shall be treated as an unsecured claim. The property securing the Secured Claims will remain subject to the liens and interests of each secured creditor to the extent of the value of the collateral until such claims are paid. **Class 3(A) through 3(B)** shall be treated as separate classes for voting purposes, and shall be deemed to be impaired. If property upon which a lien or mortgage has been perfected is sold, then the value of such allowed secured claims shall be paid from proceeds of the sale in the order of priority according to 11 U.S.C. §363 and all other applicable

sections of the Code.

3.04    **Class 4** Judgment Creditor Claims and Mechanics Liens, if any are impaired under the Plan. If property upon which a judgement has been perfected is sold, then such Class shall be paid their allowed Claims without interest from any proceeds remaining from the sale of that property to which any judgment lien attached, in the order of the date of filing of judgment liens, but only after all Class 3 Claims secured by such property have been paid in full. Otherwise, judgement creditors shall be paid in monthly installments beginning on the Effective Date of the Plan and continuing until such time as they are paid in full. To the extent of any deficiency, Judgment Creditor Claims shall be treated as Unsecured Claims.

3.05    **Class 5** Executory Contracts and Unexpired Leases

All Contracts which existed as of the Filing Date between the Debtors and any individual or entity, whether such contract be in writing or oral, which have not heretofore been accepted by Final Order or in the Plan of Reorganization, are hereby specifically rejected. Any person or entity claiming rights under an executory contract or unexpired lease rejected pursuant to the provisions of this Article or 11 U.S.C. Section 365 shall have thirty (30) days after the Confirmation Date to file a proof of claim, or such additional time as the Court, before that date, may allow. This Class is deemed to be impaired.

3.06    **Class 6** Claims of General Unsecured Creditors shall be impaired under the Plan. Such Class shall be paid a percentage of their allowed Claims without interest after the Effective Date as set forth in this Plan of Reorganization. This Class is deemed to be impaired.

3.07    **Class 7** Equity ownership. This class will receive no monies; however, the stock ownership if the debtor is a corporation, by members of this Class shall be retained. If the debtor is not a corporation, then equity ownership will include partnership property if the debtor is a partnership or any interest in personal or real property of the debtor if the debtor is an individual. This Class shall be deemed to be impaired.

## LIQUIDATION ANALYSIS

The bankruptcy schedules which are filed with the Court reflect all property owned by the Debtor, all secured claims pertaining to that property, and all exemptions on that property to which the Debtor is entitled. By calculating the net non-exempt equity as follows, with regard to each item of collateral, we observe that the Debtor offers more to creditors in this Chapter 11 than they would receive in a liquidation of those assets:

| ITEM | RETAIL VALUE | LIQUIDATION VALUE | CLAIM | EXEMPTION | EQUITY |
|---|---|---|---|---|---|
| Residential real property located at 1 Yorkswell Lane. Greenville, SC | $400,000 | $300,000 | $398,867 | n/a | $0.00 |
| Condominium located at 521 Fagin Circle, Mauldin, SC | $85,000 | $63,750 | $103,437 | n/a | $0.00 |
| Household furnishings and clothing | $7,050 | $5,288 | $0.00 | $8,250 | $0.00 |
| Jewelry | $2,950 | $2,213 | $0.00 | $2,050 | $163.00 |
| 2003 Ford Excursion | $8,500 | $6,375 | $0.00 | $5,150 | $0.00 |
| 2000 Volkswagon Beetle | $3,000 | $2,250 | $0.00 | n/a | $2,250.00 |
| 2005 Ford Expedition | $7,500 | $5,625 | $0.00 | $5,150 | $475.00 |
| 2004 Ford Explorer | $5,000 | $3,750 | $0.00 | n/a | $3,750.00 |
| 2003 Winnebago Sightseer 31ft motor home with 1 slideout | $20,000 | $15,000 | $0.00 | n/a | $15,000.00 |
| 2004 Motorcycle KTM 950 | $3,000 | $2,250 | $0.00 | n/a | $2,250.00 |
| 2007 EXC 525 motorcycle | $4,000 | $3,000 | $0.00 | n/a | $3,000.00 |
| 1998 Honda GL 1500 motorcycle | $5,000 | $3,750 | $0.00 | n/a | $3,750.00 |
| 2000 JC 266 Triton boat with 5.0L EFI Inboard/outboard motor | $5,000 | $3,750 | $0.00 | n/a | $3,750.00 |
| 2000 MTI boat trailor | $1,000 | $750 | $0.00 | n/a | $750.00 |
| Miscellaneous small office equipment and furnishings located within home | $2,900 | $2,175 | $0.00 | $3,100 | $0.00 |
| ROTH IRA (Him) Fidelity | $19,192 | $19,192 | $0.00 | 100% | $0.00 |

8

| | | | | | |
|---|---|---|---|---|---|
| ROTH IRA (Her) Fidelity | $19,192 | $19,192 | $0.00 | 100% | $0.00 |
| IRA Rollover Fidelity | $143,863 | $107,897 | $0.00 | 100% | $0.00 |
| Vanguard Mutual Fund | $2,500 | $1,875 | $0.00 | n/a | $1,875.00 |
| Term life insurance (him) Face value $2,000,000 No cash value | $0.00 | $0.00 | $0.00 | 100% | $0.00 |
| Term life insurance (him) Face value $1,000,000 No cash value | $0.00 | $0.00 | $0.00 | 100% | $0.00 |
| Term life insurance (her) $1,000,000 face value No cash value | $0.00 | $0.00 | $0.00 | 100% | $0.00 |
| Checking and cash | $296,262 | $296,262 | $0.00 | $11,750 (Liquid and available wild card for both) | $284,512.00 |
| Disney common stock 2 shares at $34 per share | $68 | $68 | $0.00 | n/a | $68.00 |
| Barnes Commercial Holdings, LLC (Chapter 11#09-06594-hb) presently reorganizing its financial affairs. Liabilities exceed asset values. | $0.00 | $0 | $0.00 | $0 | $0.00 |
| Sable Investments Group, LLC Closed/inactive/insolvent Liabilities exceed asset values. | $0.00 | $0.00 | $0.00 | n/a | $0.00 |
| RD Upstate A, LLC Closed/inactive/insolvent Liabilities exceed asset values. | $0.00 | $0.00 | $0.00 | n/a | $0.00 |
| Spring River Holdings, LLC Closed/inactive/insolvent Liabilities exceed asset values. | $0.00 | $0.00 | $0.00 | n/a | $0.00 |
| SABEX, LLC Closed/inactive/insolvent Liabilities exceed asset values. | $0.00 | $0.00 | $0.00 | n/a | $0.00 |
| EGT Digital, LLC Closed/inactive/insolvent Liabilities exceed asset values. | $0.00 | $0.00 | $0.00 | n/a | $0.00 |
| | | | | Total Equity | $321,593.00 |

A liquidation of the assets would likely result in a twenty-five (25%) percent reduction in the above retail value figures, therefore equity resulting from the forced liquidation value of assets equal $321,593.00. Of this amount, unsecured priority creditors would receive their $37,406.97 (see IRS proof of claim), and $198.59 (see Greenville County Tax Collector proof of claim), if legitimate, although the debtors dispute both. If those claims survive, this would leave the sum of $283,987.44 for general unsecured creditors in a hypothetical chapter 7 case. If, however, those priority claims do not survive, this would leave the sum of $321,593 for general unsecured creditors to split on a pro rata basis. Because this issue has not yet been resolved, and because certain unsecured general claims will be challenged by the debtors via objections to claims and in this chapter 11 plan, it is at present difficult to determine the exact percentage

9

each will receive.

## SCHEDULE OF DISTRIBUTION OF PAYMENTS TO CREDITORS

**Class 1.** Administrative Claims

>**United States Trustee:** 28 U.S.C. §1930(a)(6) provides as follows:
>In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States Trustee, for deposit in the Treasury, in each case under Chapter 11 of Title 11 for each quarter (including any fraction thereof) until the case is closed, dismissed or converted to another chapter. This fee is based upon the disbursements made each quarter by the Debtor-in-Possession, and the amount of such fees are based upon a schedule provided in the above-described statute a copy of which was provided to the Debtor-in-Possession at the beginning of the Chapter 11 case. Such fee shall be payable on the last day of the calendar month following the calendar quarter for which the fee is owed.

**Class 2.** Priority Claims

>**Internal Revenue Service:** This entity filed an amended proof of claim on February 12, 2010. The priority portion was shown as $37,406.97. The debtors dispute this claim as their tax preparer, H&R Block has advised that an amended return needs to be filed based upon a mistake that the tax prepraer made, which may result in a substantial refund. Therefore, the debtors will await the outcome of that amended return prior to stating specific payments if any to this creditor. This issue will also affect the net equity in assets, which affects the specific payout to general unsecured creditors.
>
>**Greenville County Tax Collector:** This creditor filed a proof of claim on October 23, 2009 in the amount of $4,056.97 representing 2009 ad valorem taxes on the debtors' primary residence located at 1 Yorkswell Lane, Greenville, SC and their rental condominium located at 521 Fagin Circle, Mauldin, SC. It then filed a claim on November 6, 2009, in the amount of $198.59. Although, the most recent claim does not state that it is an amended claim, the debtors believe that it is intended to be. Upon information and belief these claims have been paid, and the debtors owe no further funds to this tax entity. Therefore, none will be paid in this chapter 11 plan.

**Class 3. Secured claims**

>(A) **BAC Home Loan Servicing LP: (Secured by Mortgage upon primary residence located at**

**1Yorkswell Lane, Greenville, SC.** This creditor filed a proof of claim on November 6, 2009, in the amount of $398,866.73. The debtors will continue to pay the sum of $2,756 per month at the contractual rate of interest until this debt is paid in full. Therefore, in essence this creditor is being paid outside the chapter 11 plan, and will not, therefore, delay the debtors' discharge after unsecured and priority creditors have been paid under the plan.

**(B) Bank of America**: ( Secured by mortgage upon residential condominium located at 521 Fagin Circle, Mauldin, SC. This creditor filed a proof of claim in the amount of $103,498.78. The debtors will continue to pay the contractual payment of $717.72 per month at the normal contractual rate of interest until the debt is paid in full. Therefore, in essence this creditor is being paid outside the chapter 11 plan, and will not, therefore, delay the debtors' discharge after unsecured and priority creditors have been paid under the plan.

**Class 4. Judgement Creditor Claims and Mechanics Liens**

**NONE**

**Class 5. Executory Contracts and Unexpired Leases**

All Contracts which existed as of the Filing Date between the Debtors and any individual or entity, whether such contract be in writing or oral, which have not heretofore been accepted by Final Order, or in the Plan of Reorganization, are hereby specifically rejected. Any person or entity claiming rights under an executory contract or unexpired lease rejected pursuant to the provisions of this Article or 11 U.S.C. Section 365 shall have thirty (30) days after the service of the chapter 11 plan to file a proof of claim, or such additional time as the Court, before that date, may allow.

Executory contracts specifically accepted or rejected:

The debtor accepts the royalty agreement with this entity.

The debtor rejects the covenant not to complete with this entity.

**Class 6. <u>General unsecured creditors</u>**

**Bank of America:** This creditor filed a proof of claim in the amount of $147,276.91. This debt is unsecured as to the debtors, because it is secured by real property owned by the debtors' business known as "Barnes Commercial Holdings, LLC" located at 124 Cotter Lane, Greer, SC.

**Bank of America:** This creditor filed a proof of claim in the amount of $54,801.47. This debt is unsecured as to the debtors, because it is secured by real property owned by the debtors' business known as "Barnes Commercial Holdings, LLC". Although the creditors proof of claim does not identify the LLC property upon which this claim is attached with a personal guaranty by debtors, the debtors believe that the claim is secured by LLC owned property located at Highway 276, Greer Highway, Cleveland, SC.

**Bank of America:** This creditor did not file a proof of claim. This debt is unsecured as to the debtors, because it is secured by real property owned by the debtors' business known as "Barnes Commercial Holdings, LLC located at 41 North Orchard Farms Avenue, Simpsonville, SC.

**Bank of America:** This creditor did not file a proof of claim. This debt is unsecured as to the debtors, because it is secured by real property owned by the debtors' business known as "Barnes Commercial Holdings, LLC located at 502 Collingsworth Lane, Greenville, SC.

**Bank of America:** This creditor did not file a proof of claim. This debt is unsecured as to the debtors, because it is secured by real property owned by the debtors' business known as "Barnes Commercial Holdings, LLC located at 4 Breckenridge Court, Greenville, SC.

**Bank of America:** This creditor did not file a proof of claim. This debt is unsecured as to the debtors, because it is secured by real property owned by the debtors' business known as "Barnes Commercial Holdings, LLC located at Lot 14, 130 Topsail Drive, Anderson, SC.

**Bank of America:** This creditor did not file a proof of claim. This debt is unsecured as to the debtors, because it is secured by real property owned by the debtors' business known as "Barnes Commercial Holdings, LLC located at Lot 52, Bridge View Court, Cleveland, SC.

**Bank of America:** This creditor did not file a proof of claim. This debt is unsecured as to the debtors,

because it is secured by real property owned by the debtors' business known as "Barnes Commercial Holdings, LLC located at Lot 64, and 65 Bridge View Court, Cleveland, SC.

**Bank of America (ending in 00281: Commercial unsecured line of credit):** This creditor filed a proof of claim in the amount of $138,674.28.

**Bank of America (#8253, Business credit card):** This creditor did not file a proof of claim; however, the debtor scheduled the debt as unsecured in the amount of $35,000.

**Bank of America (#2600, credit card):** This creditor did not file a proof of claim; however, the debtor scheduled the debt as unsecured in the amount of $4,000.

**BB&T**: This creditor filed a proof of claim in the amount of $70,510.35. The documentation attached to the proof of claim reflects that it is represented by a promissory note executed by debtor Robert Barnes as member of Sable Investment Group, LLC, and he also executed a personal guarantee according to that documentation.

**Chase (Visa credit card #0466):** This creditor filed a proof of claim in the amount of $3,950.56.

**Chase (Visa credit card #2527):** This creditor filed a proof of claim in the amount of $891.89.

**Chase (Visa credit card #8555):** This creditor filed a proof of claim in the amount of $3,483.38.

**Community Bank:** This creditor filed a proof of claim in the amount of $197,558.08 as secured. However, this claim is unsecured as to the debtors, because it is secured by real property owned by a business owned by Mr. Barnes known as "Spring River Holdings, LLC" located at 5154 Elmore Road, Memphis, TN 38134. Documents attached to this creditor's proof of claim indicate that the promissory note was personally guaranteed by debtor Robert Barnes, and another individual, and that the value of the real property securing the debt exceeds the net balance of the debt.

**Dockside Marina**: This creditor did not file a proof of claim. However, the debtors scheduled a claim for this creditor as disputed. Therefore, no payment will be made to this entity.

**FIA Card Services, NA as successor in interest to Bank of America, NA and MBNA, 1000 Samoset Drive, DE5-023-03-03, Newark, DE 19713**: This creditor filed a proof of claim in the amount of $59.95.

**First Citizens**: This creditor filed a proof of claim in the amount of $543,072.41. The claim was

correctly filed as unsecured as to the debtors personally, because the claim is secured by real property owned by the debtors' business known as "Barnes Commercial Properties, LLC" located at 1001 West Wade Hampton Blvd., Greer, SC. 29650.

**First Citizens:** This creditor filed a proof of claim in the amount of $18,507.03. The claim was correctly filed as unsecured as to the debtors personally, because the claim represents an unsecured commercial loan to a business known as "Sable, LLC" of which debtor Robert Barnes is a principal along with another individual with Robert Barnes having executed a personal guarantee.

**Graphic Arts Acquisition Corporation :** This creditor filed a proof of claim in the amount of $3,000,000. The creditor's proof appears to be based upon a pre-petition lawsuit filed prior to the bankruptcy. The debtors dispute this claim as this creditor has received no order from a court of competent jurisdiction reflecting that it is owed this amount of money, and this creditor did not file an adversarial proceeding in the bankruptcy court either.

**Home Depot:** This creditor did not file a proof of claim. However, the debtors scheduled a claim for this creditor in the amount of $100.00.

**Johnson Electric Company:** This creditor did not file a proof of claim. However, the debtors scheduled a claim for this creditor in the amount of $500.00.

**Lowes:** This creditor did not file a proof of claim. However, the debtors scheduled a claim for this creditor in the amount of $50.

**Pinnacle Bank of SC:** This creditor filed a proof of claim in the amount of $786,593.71. The claim was filed as secured. However, the claim is unsecured as to the debtors personally, because it is secured by real property owned by the debtors' business known as "Barnes Commercial Holdings, LLC" located at 20 Lowery Drive, Greenville, SC.

**Screenprint/Dow, Inc. c/o Rory D Whelehan, Esquire, Womble Carlyle Sandridge & Rice, PO Box 10208, Greenville, SC 29603-0208:** This creditor filed a proof of claim in the amount of $163,609.50. The creditor's proof appears to be based upon a pre-petition lawsuit filed prior to the bankruptcy. The debtors dispute this claim as this creditor has received no order from a court of competent jurisdiction reflecting that it is owed this amount of money, and this creditor did not file an adversarial proceeding

in the bankruptcy court either.

**Victor and Anne Lopez:** This creditor filed a proof of claim in the amount of $267,375.46, alleging it to be a priority claim. This is not a priority claim under the Bankruptcy Code as it meets none of section 507's priority elements, and is not, therefore, entitled to priority status, and will not be paid as such in this chapter 11 plan. The creditor's claim appears to be a general unsecured non-priority claim; however, the debtors dispute the amount of the claim as filed, because the documentation attached to the claim appears to reflect costs and other charges that the debtors dispute.

**Wachovia Bank:** This creditor filed a proof of claim in the amount of $481,805.24. This claim was correctly filed as unsecured as to the debtors, because it is secured by by real property owned by the debtors' business known as "Barnes Commercial Holdings, LLC located at 394 W. Butler Road, Mauldin, SC.

**Wachovia Bank:** This creditor did not file a proof of claim. This debt is unsecured as to the debtors, because it is secured by real property owned by the debtors' business known as "Barnes Commercial Holdings, LLC" located at 1001 South Church Street, Unit 203, Greenville, SC.

**Wachovia Bank:** This creditor did not file a proof of claim. This debt is unsecured as to the debtors, because it is secured by real property owned by the debtors' business known as "Barnes Commercial Holdings, LLC located at 14 Buckhannon Road, Greenville, SC.

**Wachovia Bank:** This creditor did not file a proof ofclaim. This debt is unsecured as to the debtors, because it is secured by real property owned by the debtors' business known as "Barnes Commercial Holdings, LLC located at 18 Shadowrock Court, Greenville, SC.

**Wachovia Bank:** This creditor did not file a proof of claim. This debt is unsecured as to the debtors, because it is secured by real property owned by the debtors' business known as "Barnes Commercial Holdings, LLC located at 207 Ackerman Court, Greenville, SC.

**Wachovia Bank:** This creditor did not file a proof of claim. This debt is unsecured as to the debtors, because it is secured by real property owned by the debtors' business known as "Barnes Commercial Holdings, LLC located at 209 Valhala Lane, Simpsonville, SC.

**Wachovia Bank:** This creditor did not file a proof of claim. This debt is unsecured as to the debtors,

because it is secured by real property owned by the debtors' business known as "Barnes Commercial Holdings, LLC located at 312 Abbey Gardens Lane, Simpsonville, SC.

**Wachovia Bank:** This creditor did not file a proof of claim. This debt is unsecured as to the debtors, because it is secured by real property owned by the debtors' business known as "Barnes Commercial Holdings, LLC located at 34 Mountain Rose Court, Simpsonville, SC.

**Wachovia Bank:** This creditor did not file a proof of claim; however, the debtors listed the claim as a business line of credit in the amount of $250,000 of which they personally guaranteed.

**Class 7.** Equity Ownership: The debtor will retain all interest in property that he owns.

**DEBTORS ARE INDIVIDUALS**

_____
Robert H. Cooper, Dist. Ct. ID #5670
THE COOPER LAW FIRM
Attorneys for the Debtor
3523 Pelham Road, Ste B
Greenville, South Carolina 29615
(864) 271-9911 Phone
(864) 232-5236 Facsimile
rhcooper@thecooperlawfirm.com

Dated this 4th day of April, 2010